United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM SERRANO, on behalf of himself, the general public, and as an aggrieved employee under the California Labor Code Private Attorney General Act,<br><br>           Plaintiffs,<br><br>      v.<br><br>180 CONNECT INC., et al.,<br><br>           Defendants. | NO. C 06-1363 TEH<br><br>ORDER GRANTING<br>MOTION TO REMAND |

The Court is in receipt of Defendants' supplemental brief re Plaintiff's motion to remand and Plaintiff's response thereto. After further consideration of both parties' arguments, the record, and the relevant case law, this Court affirms its tentative order to remand this matter.

## I. BACKGROUND

On January 23, 2006, Plaintiff, William Serrano ("Serrano"), filed this action in San Francisco Superior Court as a "Class, Representative and Private Attorney General Action." Serrano was employed as a residential installation technician and asserts, on behalf of himself and others similarly situated, that Defendants violated a number of California Labor Code sections. On February 23, 2006, all of the Defendants who had been served—180 Connect, Inc., Ironwood Communications, Inc., and Mountain Center, Inc.—removed the

action to this Court, alleging jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(b). Defendants asserted that the case is properly removable under CAFA because there is minimal diversity between Plaintiff and Defendants, and the amount in controversy exceeds the jurisdictional threshold of $5,000,000.

On March 24, 2006, Plaintiff moved to remand the case to state court on the ground that Defendants failed to meet their burden of demonstrating that the amount in controversy exceeds $5,000,000. Plaintiff further argued that even if Defendants had met their burden on this point, the Court is still required to decline jurisdiction and remand this action pursuant to two of the exceptions to removal jurisdiction set forth in CAFA: (1) the "local controversy" exception, and (2) the "home state" exception. *See* 28 U.S.C. §§ 1332(d)(4)(A), (B).

On June 21, 2006, this Court held that Defendants had satisfied their burden of demonstrating that the amount in controversy exceeds $5,000,000. The Court further found, however, that Defendants also had the burden of proving the inapplicability of both the local controversy and home state exceptions to removal jurisdiction. While Defendants demonstrated the inapplicability of the local controversy exception, they did not prove the inapplicability of the home state exception. However, because this is a newly evolving area of law, the Court exercised its discretion to allow Defendants an additional opportunity to demonstrate that they had met their burden with respect to the home state exception. As explained below, the Court concludes that Defendants' supplemental filing does not adequately satisfy their burden, and thus the Court affirms its tentative conclusion that this action should be remanded for lack of jurisdiction.

## II. DISCUSSION

In its June 21, 2006 order, the Court explained that to meet their burden of proof regarding the inapplicability of the home state exception, Defendants must show that either (1) more than one-third of the proposed class members are not citizens of California or (2) at least one "primary defendant" is not a citizen of the home state. 28 U.S.C. § 1332(d)(4)(B). The Court further explained that a "primary defendant" is one who either (1) is directly liable

2

for a "main" or "principal" portion of the relief sought or (2) plays a "main" or "principal" role in the underlying dispute (i.e. based on its alleged conduct).[1]

In their supplemental brief, Defendants decline to set forth any evidence with regard to the class citizenship prong of the primary defendant test, instead reserving such evidence and "preserv[ing] their legal position for any subsequent changes to existing case law." Supp. Brief at 5. Thus, the Court is left to analyze whether Defendants have met their burden of establishing that at least one of the two non-California Defendants (Ironwood or 180 Connect) either (1) is potentially directly liable for a primary portion of a potential settlement or damages or (2) played a main or principal role in the underlying dispute. Each issue is addressed in turn.

### A. **Potential Direct Liability for Main or Principal Portion**

Only potential direct liability satisfies the first prong of the "primary defendant" test. Thus, primary defendants would include "all defendants facing direct liability, and exclud[e] all defendants joined as secondary or third-party defendants for purposes of vicarious liability, indemnification or contribution." *Passa v. Derderian*, 308 F. Supp. 2d 43, 62 (D. R.I. 2004). The *Passa* court explained this limited definition, noting that:

> all defendants sued directly in a cause of action maintain a dominant relationship to the subject matter of the controversy, while those parties sued under theories of vicarious liability, or joined for purposes of indemnification or contribution, maintain an indirect or "secondary" relationship to the litigation.

*Id.* at 62-63. Defendants do not establish that either Ironwood or 180 Connect would potentially be directly liable on Plaintiff's claims. Instead they summarily address this issue in their supplemental brief in one sentence, stating only that "[i]f there is a judgment or settlement to be paid in this case, 180 Connect would pay that judgment or settlement out of

---

[1] Notwithstanding this Court's explicit order that Defendants limit their supplemental brief exclusively to the evidentiary deficiencies identified in the June 21, 2006 Order, Defendants nevertheless reargue the issue of how "primary defendant" should be defined. Further, Defendants raise arguments that could readily have been raised in their original brief. Accordingly, the Court does not address Defendants' improper argument.

United States District Court
For the Northern District of California

3

its one operating account.  Mountain Center would not pay for the judgment or settlement." Supp. Brief at 4.  Establishing direct liability, however, is not simply a matter of establishing who will literally pay the bill; rather, Defendants needed to establish in what capacity 180 Connect would pay—whether it would be potentially directly liable as the Plaintiffs' employer, or liable in some secondary capacity for the actions of its subsidiaries.  Since Defendants failed to address this critical question, they fall short of establishing that 180 Connect could have potential direct liability.  Further, Defendants do not address Ironwood's potential direct liability at all.  Accordingly, Defendants have not established either 180 Connect's or Ironwood's status as a primary defendant under the first prong of the test.

### B. <u>Main or Principal Role in Underlying Dispute</u>

As noted above, Defendants can also demonstrate that 180 Connect or Ironwood are primary defendants by showing that they played a main or principal role in the underlying dispute.  Given that this case arises in the context of an employer-employee dispute, Defendants invoke the "integrated enterprise" test to demonstrate that 180 Connect and/or Ironwood qualifies as a primary defendant.  While this test is typically used to determine whether a parent enterprise can be held liable as an employer of an individual working within one of the parent's subsidiaries, *see e.g Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 (Cal. App. 4th 1998), Defendants use it to argue that 180 Connect and/or Ironwood should be found to play a main or principal role in the underlying dispute because of their relationship to MCI.[2]

---

[2] While the integrated enterprise test has most often been applied in Title VII disputes, the Court agrees with Defendants that it can be utilized in this instance. Not only is the test drawn from labor law principles, see *Bruce v. S & H Riggers & Erectors, Inc.*, 732 F. Supp. 1172, 1175 (N.D. Ga. 1990) (citing generally *Radio & Television Broad. Technicians v. Broad. Serv. of Mobile , Inc.*, 380 U.S. 255 (1965)), but its emphasis on control and day-to-day management is especially applicable to the conduct prong of the "primary defendant" test in this case insofar as it speaks to how, if at all, the parent enterprise's conduct was involved in the underlying employment issues.  The Court does not intend by this ruling to exclude other approaches to this issue; given, however, that Defendants have invoked the integrated enterprise test, and Plaintiffs do not object, the Court has followed this approach in this instance.

4

Four factors are examined under this test, including interrelation of operations, common management, common ownership or financial control, and centralized control of labor relations. *Id.* While no one factor under this test is dispositive, emphasis is placed on the centralized control element, particularly with regard to whether the parent corporation takes part in day-to-day management of the subsidiary's employees and whether the employment issue in dispute was propagated primarily by the parent entity. *See Laird*, 68 Cal. App. 4th at 738 (noting that "courts...often deem centralized control of labor relations the most important [factor]"); *Frank v. U.S. West*, 3 F.3d 1357, 1363 (stating that "[t]o satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary" and that "[t]he critical question is, 'what entity made the final decisions regarding employment matters related to the person claiming discrimination?'" [citation omitted]).

Defendants set forth evidence which meets some factors of the integrated enterprise test. However, even assuming that Defendants need not prove that 180 Connect or Ironwood are an "integrated enterprise" with MCI but need only establish a "genuine controversy" on this point (as Defendants argue in their supplemental brief) they fail to set forth enough evidence to even establish such a controversy. Notably, Defendants conspicuously fail to even address which Defendant or Defendants are involved in the employment decisions at issue in this case, such as establishing meal, rest break, and overtime policies. Notice of Removal at 10. Further, Defendants only appear to argue that 180 Connect is a primary defendant, while also relying on the activities of Ironwood to buttress this argument. However, as explained below, reliance on a second subsidiary is insufficient to establish the employer status of a parent entity. Also, Defendants cannot use the integrated enterprise test to establish Ironwood as a parent entity with an employer relationship to Mountain Center, as Ironwood is clearly only another subsidiary of 180 Connect.[3] Thus, after considering all evidence set forth by Defendants, this Court finds that 180 Connect and Ironwood lack primary defendant status. The four factors are discussed in turn below.

---

[3] *See Exhibit 9, Ironwood Communications, Inc. Handbook for California Employees* at 7, stating that "Ironwood is a separate company within 180 Connect."

### 1. **Interrelation of Operations**

To establish the interrelation of operations, Defendants must show that 180 Connect "exercised greater control over [Mountain Center] than a parent corporation normally would exercise over a subsidiary." *Cellini v. Harcourt Brace & Co.*, 51 F. Supp. 2d 1028, 1034 (S.D. Cal. 1999). Defendants state that the interrelation of operations between 180 Connect and Mountain Center is evidenced by the fact that both companies function for the same purpose (namely, to provide "home entertainment, communications, security, and home integration service[s]"). Supp. Brief at 4 (citing Supp. Amato Decl. at 2). According to 180 Connect's 2005 Annual Report, one of Mountain Center's primary duties is the provision and installation of DirecTV services, and "approximately 86% of the company's consolidated revenues in 2005 came from its contracts with DirecTV." *Id*. However, "merely because a parent corporation eventually benefits from the work of its subsidiaries is not evidence of interrelated operations." *Frank*, 3 F.3d at 1363.

However, Defendants do set forth further evidence of interrelatedness. Defendants also state that Mountain Center provides DirecTV services via a contract that was negotiated and signed by the Chief Financial Officer of 180 Connect; that 180 Connect bought or leased trucks used by Mountain Center technicians; and that 180 Connect sponsors and administers the benefit plans for Mountain Center employees. Supp. Brief at 4 (citing Supp. Amato Decl. at 2). Further, Defendants mention that 180 Connect funds the payroll, issues the checks, and reimburses the expenses of Mountain Center employees. *Id*. at 3. Combined, this evidence is sufficient to satisfy the first prong of the integrated enterprise test with regard to the relationship between 180 Connect and Mountain Center. *See Frank*, 3. F.3d at 1363 (noting that evidencing a parent's issuing paychecks, paying bills, and renting property to the subsidiary sufficed to establish the "interrelation of operations" prong).

However, Defendants do not successfully establish an interrelation of operations between Mountain Center and Ironwood. Notably, as Ironwood is a subsidiary of 180 Connect, applying the integrated enterprise test to show interrelatedness between Ironwood and Mountain Center does not sufficiently establish either Ironwood or 180 Connect as a

6

1 primary defendant. This is especially true as Defendants have said nothing to demonstrate
2 Ironwood's involvement in the employment decisions which gave rise to the fact dispute.
3 Nor will establishing a relationship between Ironwood and Mountain Center serve to
4 substantiate the relationship between 180 Connect and Mountain Center. *See Frank*, 3 F.3d
5 at 1362 (stating that interrelated operations between a parent company and a subsidiary
6 cannot be inferred from the interrelated operations between the subsidiaries of a parent
7 company).

### 2. Common Management

To establish the common management of 180 Connect and Mountain Center, Defendants set forth evidence that the Chief Executive Officer and Chief Financial Officer of 180 Connect serve those same roles for Mountain Center. Supp. Brief at 3 (citing Supp. Amato Decl. at 2). The overlap of these two positions is indicative of some degree of common management. The Court does not, however, give this factor substantial weight because Defendants fail to provide any evidence that these two executives were involved in the employment decisions at issue in their capacity as 180 Connect executives.

### 3. Common Ownership

Of all of the elements within the integrated enterprises test, the "common ownership" factor is most effectively established by Defendants. They set forth evidence that 180 Connect owns Mountain Center; processes payroll for Mountain Center, for which checks are drawn from the 180 Connect bank account; and reimburses Mountain Center employee expenses through 180 Connect's accounts payable department. Supp. Brief at 3 (citing Supp. Amato Decl. at 2).

While the above evidence clearly establishes the common ownership of 180 Connect and Mountain Center, "common ownership or control alone is never enough to establish parent liability." *Laird*, 68 Cal. App. 4th at 738. *See also Frank*, 3. F.3d at 1364; *Cellini*, 51 F. Supp. at 1034. In fact, courts have often recognized this factor as the least important of the four. *See Pearson v. Component Tech Corp.*, 247 F.3d 471, 494 (3rd Cir. 2001) (noting that common ownership is "typically referred to as the 'least important' of the factors");

7

*Tatum v. Everhart*, 954 F. Supp. 225, 229 (D. Kan. 1997) (stating that the "least important factor is common ownership or financial control").

### 4. Centralized Control of Labor Relations

As abovementioned, the "centralized control" factor carries the greatest weight in the integrated enterprise test. *Frank*, 3. F.3d at 1363. The most important and relevant aspect of this prong is whether the parent corporation exercised control over the day-to-day employment related decisions at Mountain Center:

> Although courts consider the four factors [of the integrated enterprise test] together, they often deem centralized control of labor relations the most important. [Citations omitted.] "The critical question is, what entity made the final decisions regarding employment matters related to the person claiming discrimination? [Internal quotations omitted.] [Citation.] A parent's broad general policy statements regarding employment matters are not enough to satisfy this prong. [Citation.] To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary. [Citations.]"

*Laird*, 68 Cal. App. 4th at 738 (citing *Frank*, F.3d at 1363); see also *Cellini*, 51 F. Supp. at 1034.

Here, Defendants only set forth one piece of evidence for the purpose of establishing this important factor, stating that the Human Resources Generalists, who are employees of 180 Connect, handle human resources and employee relations issues, e.g., disciplinary matters, that escalate to the point of needing attention by Human Resources. Supp. Brief at 4 (citing Supp. Amato Decl. at 2). Defendants also mention that Ironwood establishes technician pay rates and creates the Ironwood employee handbook, Supp. Brief at 4; however, as noted above, Ironwood is a subsidiary and as such cannot be characterized as a primary defendant through the application of the integrated enterprise test.

Thus, Defendants completely fail to provide any evidence indicating that 180 Connect is responsible for "the final decisions regarding employment matters" related to the instant dispute. *Frank*, 3. F.3d 1363 (internal quotations and citation omitted). Further, Defendants do not speak to who controls commonly recognized "day-to-day employment decisions [including] hiring, performance evaluations, and work assignments." *Cellini*, 51 F. Supp. 2d at 1034. The mere fact that 180 Connect's Human Resource Department handles matters that

8

escalate to a point requiring their attention is not sufficient to establish this important prong of the test, and it certainly does not establish that 180 Connect was directly involved in the alleged employment decisions, actions, and nonactions that propagated the instant suit.

### 5. <u>Summary</u>

While Defendants provide varying degrees of evidence with respect to the first three of the integrated enterprise test's prongs, they were unable to create a genuine controversy with respect to the most critical element of the test—that 180 Connect has any involvement in developing, implementing, or overseeing any of the employment policies complained of by Plaintiffs. While Defendants expressed their reservations about "proving up Plaintiff's substantive claims," Supp. Brief at 3, they would not have had this burden. To meet their burden of proving 180 Connect as a primary Defendant, Defendants would merely have had to at least create a genuine controversy with respect to 180 Connect's involvement in the type of employment decisions and policies which underlay Plaintiff's causes of action. Of course, Defendants could continue to deny the bases of these claims without hiding the identity of which Defendants had the management authority surrounding these aspects of Plaintiff's employment. This Court has found no case where the integrated enterprise test has been satisfied where there has been a complete absence of evidence on this critical issue.

For all of the reasons explained above, this Court concludes that Defendant's supplemental submission fails to satisfy their burden of showing either that one-third of the proposed class members are not California citizens or that Defendant Ironwood or Defendant 180 Connect is a primary defendant either because (1) "it is directly liable for a 'main' or 'principal' portion of the relief sought" (2) it has a "primary...degree of involvement in the underlying dispute (i.e. based on its alleged conduct)." June 21, 2006 Order at 19.

9

### III. CONCLUSION

Accordingly, and good cause appearing, the Court finds that it is precluded from exercising jurisdiction over this matter under 28 U.S.C. section 1332(d), and thus it must be remanded pursuant to 28 U.S.C. § 1447(c). Plaintiff's motion to remand is thus granted and this matter is **REMANDED** forthwith to the San Francisco Superior Court, each party to bear its own costs.

**IT IS SO ORDERED.**

Dated: 08/11/06

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT